IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


CHARLES JONES and CHUCK JONES                3:11-CV-01012-BR
AND ASSOCIATES, INC., an
Oregon corporation,
                                             OPINION AND ORDER
        Plaintiffs,

v.

THE H GROUP, INC., an Oregon
corporation; CHRISTOPHER
HICKS; TODD SAKODA; and
FOCUSPOINT SOLUTIONS, INC.,
an Oregon corporation,

        Defendants.


ROBERT A. SWIDER
MARTIN F. MEDEIROS
Swider Medeiros Haver LLP
621 S.W. Morrison Street
1410 American Bank Building
Portland, OR 97205
(503) 241-9577

        Attorneys for Plaintiffs


1 - OPINION AND ORDER

**LISANNE M. BUTTERFIELD**
**JOHN T. CARR**
Carr Butterfield, LLC
155 B Street
Suite 240
Lake Oswego, OR 97034
(503) 635-5244

**JEFFREY W. HANSEN**
**JOSEPH A. ROHNER , IV**
Smith Freed & Eberhard PC
111 S.W. Fifth Ave #4300
Portland, OR 97204
503-227-2424

       Attorneys for Defendants


**BROWN, Judge.**

    This matter comes before the Court on Defendants' Motion
(#8) to Dismiss First Claim for Relief and Sixth Claim for
Relief.  For the reasons that follow, the Court **GRANTS**
Defendants' Motion.


<u>**BACKGROUND**</u>

    The following facts are taken from Plaintiffs' Complaint:

    In 1995 Plaintiff Chuck Jones and Associates, Inc. (CJA)
entered into a lease with Defendant The H Group (THG) to share
office space.

    In September 1997 under various agreements between the
parties, CJA began to use THG's "back-office operations," which
"include a technological infrastructure for computer services,
server access for storing client files and other files, and

2 - OPINION AND ORDER

providing email to the Advisor Affiliates . . . and to . . .
outside advisors."  THG's back-office operations also include
market research, investment analysis, and compliance services.

In March 2004 THG formed Defendant FocusPoint Solutions,
Inc. (FPS) for its "Advisor Affiliates" and for outside
Registered Investment Advisors (RIA) who did not want to become
Advisor Affiliates of THG.

In October 2004 THG became an RIA, and all outside advisors,
including Plaintiffs Charles Jones and CJA, gave up their RIA
licenses and became Advisor Affiliates of THG.

On April 28, 2011, THG requested CJA obtain an RIA license
and continue to use FPS "for the foreseeable future."

As some point thereafter, CJA obtained an RIA license.

On May 6, 2011, Defendant Christopher Hicks[1] issued a notice
to "all associates" of THG advising:

> After almost 14 years of being a part of "The H
> Group, Inc." Chuck Jones will be forming his own
> RIA called Chuck Jones and Associates.  This all
> comes with mixed emotions for all of us as Chuck
> has been a great supporter of how "The H Group,
> Inc." operated and has deep relationships with
> many of you.  While we are disappointed to see a
> 14 year affiliation come to an end we are equally
> if not more excited for Chuck to head down this
> path.  We are very supportive of the decision and
> will do everything possible to make this as "non -
> event" as possible for both Chuck, his staff and
> his clients.
>
> We have set a timeline of the next 90 days to work

---

[1] Plaintiff does not identify Hicks's title or position.

> with Chuck through this transition.  So until the
> transition is completed he will still be
> affiliated with"The H Group, Inc.
>
> Once again I want to thank Chuck for all his
> support over the years and look forward to
> continue working with him at the FocusPoint
> Solutions level.

Compl. at ¶ 15.

On May 6, 2011, Charles Jones sent a letter to Hicks requesting at least six-months notice if THG wanted Charles Jones to move his offices out of the building.  Hicks replied there was not any plan to ask Charles Jones to move, but if "something did come up[,] we would give you a minimum of six months' notice."

On May 20, 2011, Hicks gave Charles Jones a Letter of Understanding that instructed Charles Jones to move out of the building and indicated Hicks would pay Charles Jones a $4,000 incentive to move in one week or a $2,500 incentive to move in two weeks.  Ultimately Hicks required Charles Jones to move no later than June 26, 2011.

On June 30, 2011, Charles Jones moved out of the building pursuant to a "verbal agreement" between Charles Jones and Hicks. Charles Jones understood CJA would continue to operate as its own RIA and to use THG's back-office operations.

On July 1, 2011, THG and FPS unilaterally terminated their relationship with Charles Jones and CJA as to the use of THG's back-office operations.  Also on July 1, 2011, THG sent letters to CJA's clients advising them that the relationship between CJA

4 - OPINION AND ORDER

and THG had ended and indicating they should call Todd Sakoda, THG's Compliance Officer, if they had questions about their accounts.  THG also solicited the business of CJA clients for other financial-planning questions.

On July 1, 2011, Sakoda filed a U5 Form with the Securities and Exchange Commission (SEC) indicating Charles Jones was under internal review; that Charles Jones had violated SEC Rules and Regulations; that Charles Jones had violated THG policies and procedures, which included use of testimonials and failure to disclose outside businesses and advertising violations; and that Charles Jones was under review for fraud, for taking of property, or for violating investment-related statutes, regulations, rules or violated industry standards of conduct.

On July 5, 2011, the attorney for Charles Jones and CJA requested electronic files from the FPS servers, including Charles Jones's personal files, files relating to Charles Jones's board positions, files relating to Charles Jones's vacation-rental business, "personnel files regarding CJA's business," files concerning CJA's life-insurance business, client portfolio histories, planning files for all clients of Charles Jones and CJA, and all "in-process files and transactions."

On July 8, 2011, Charles Jones and CJA received from THG access to many of the requested files, but they were not "provided in a useable form."  THG has also failed or refused to

5 - OPINION AND ORDER

provide them in a useable form.

On August 19, 2011, Plaintiffs filed an action in this Court alleging claims against all Defendants for (1) violation of the Stored Wire and Electronic Communications Act (SWECA), 18 U.S.C. §§ 2701, *et seq.*; (2) interference with economic relations; and (3) conversion as well as a claim for defamation against THG, Sakoda, and Hicks and claims for breach of contract against THG and FPS.

Defendants move to dismiss Plaintiffs' claims for violation of SWECA and conversion.

## STANDARDS

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [*Bell Atlantic v. Twombly*, 550 U.S. 554,] 570, 127 S. Ct. 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556 . . . . The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557, 127 S. Ct. 1955 (brackets omitted).

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). *See also Bell Atlantic*, 550 U.S. at 555-56. The court must accept as true the allegations in the complaint and construe them in favor of the

6 - OPINION AND ORDER

plaintiff.  *Intri-Plex Tech., Inc. v. Crest Group, Inc.*, 499 F.3d 1048, 1050 n.2 (9th Cir. 2007).

"In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice."  *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007)(citing *Jacobson v. Schwarzenegger,* 357 F. Supp. 2d 1198, 1204 (C.D. Cal. 2004)).  A court, however, "may consider a writing referenced in a complaint but not explicitly incorporated therein if the complaint relies on the document and its authenticity is unquestioned."  *Id*. (quoting *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998), *superseded by statute on other grounds as stated in Abrego v. Dow Chem. Co.*, 443 F.3d 676 (9th Cir. 2006)).

## DISCUSSION

### I.   Plaintiffs' claims for violation of SWECA

As noted, Plaintiffs allege Defendants violated SWECA.  To support that claim, Plaintiffs allege:

> 33. On information and belief, commencing on or about July 1,2011, one or more of the Defendants entered into a course of conduct consisting of intentionally accessing without authorization, or intentionally exceeding their authorization to access, the facilities through which electronic communication services are provided for the above referenced e-mail accounts.  Throughout this course of conduct one or more of the Defendants

>obtained, altered, and prevented authorized access
>to the wire or electronic communications while
>they were in electronic storage in such systems in
>violation of 18 USC §2701(a).
>
>34. On information and belief, one or more of the
>Defendants knowingly divulged to one or more
>persons or entities the contents of a
>communication while in electronic storage by that
>service in violation of 18 USC § 2702(a)(1).

Compl. at ¶¶ 33-34.  Defendants contend Plaintiffs' claim "is a

substantial misfit with the letter and spirit of the statutes at

issue."

**A.  Plaintiffs' claim under 18 U.S.C. § 2701(a)[2]**

Section 2701(a) of SWECA provides:

>(a) Offense.--Except as provided in subsection (c)
>of this section whoever--
>
>>(1) intentionally accesses without
>>authorization a facility through which an
>>electronic communication service is provided;
>>or
>>
>>(2) intentionally exceeds an authorization to
>>access that facility;
>
>and thereby obtains, alters, or prevents
>authorized access to a wire or electronic
>communication while it is in electronic storage in
>such system shall be punished as provided in
>subsection (b) of this section.

18 U.S.C. § 2701(c) provides in pertinent part:

---

[2] Although SWECA is primarily a criminal statute, § 2707(a)
provides in pertinent part that "any . . . subscriber . . .
aggrieved by any violation of this chapter in which the conduct
constituting the violation is engaged in with a knowing or
intentional state of mind may, in a civil action, recover from
the person or entity . . . which engaged in that violation such
relief as may be appropriate."

(c) Exceptions.--Subsection (a) of this section does not apply with respect to conduct authorized--

(1) by the person or entity providing a wire or electronic communications service;

(2) by a user of that service with respect to a communication of or intended for that user.

Defendants point out that § 2701(c) excepts from liability under § 2701(a) "conduct authorized . . . by the person or entity providing a wire or electronic communications service." Plaintiffs specifically allege in their Complaint that Defendants "provide . . . [a] communication service." Accordingly, even if Defendants violated § 2701(a), which Defendants deny, they did so with their own authorization, and, therefore, their actions are excepted from liability under § 2701(c).

Plaintiffs assert § 2701(c) does not apply because "Plaintiffs allege they had not authorized any of the Defendants to grant access to the FPS [electronic] facility" at issue nor did they grant "any of the Defendants consent to authorize access to Plaintiffs' electronic communications."

As Defendants note, however, § 2701(c) is not concerned with whether a *user* of an electronic communication service authorizes or does not authorize conduct. On the contrary, the statute exclusively addresses whether a *provider* of an electronic communication service authorized the conduct. Here Defendants are the providers of the electronic communication service and

9 - OPINION AND ORDER

Plaintiffs do not allege nor could Plaintiffs credibly allege
Defendants acted without their own authority.  *See, e.g., Sherman
& Co. v. Salton Maxim Housewares, Inc.,* 94 F. Supp. 2d 817, 821
(E.D. Mich. 2000)("Here [the plaintiffs'] access to the
[defendant's] data in the Kmart network system was in no way
restricted by technical means or by any express limitation.
Because section 2701 of the [SWECA] prohibits only unauthorized
access and not the misappropriation or disclosure of information,
there is no violation of section 2701 for a person with
authorized access to the database no matter how malicious or
larcenous his intended use of that access.  Section 2701 outlaws
illegal entry, not larceny.").

        In *Fraser v. Nationwide Mutual Insurance Company* the
defendant terminated the plaintiff's status as an independent
insurance agent of the defendant.  352 F.3d 107 (3d Cir. 2003).
The defendant contended it terminated the plaintiff for
disloyalty.  Specifically, the defendant became aware of two
letters that the plaintiff sent to competitors of the defendant
in which the plaintiff expressed dissatisfaction with the
defendant and asked whether the competitors would be interested
in "acquiring" some of the defendant's policyholders.  *Id*. at
110.  After learning about these letters, the defendant searched
its main file server on which all of the plaintiff's email "was
lodged" for any email to or from the plaintiff that showed

10 - OPINION AND ORDER

similar improper behavior.  *Id*.  Ultimately the plaintiff filed

an action against the defendant alleging, among other things, a

claim for violation of SWECA.  The district court granted the

defendant summary judgment as to the plaintiff's SWECA claim, and

the Third Circuit affirmed.

> 18 U.S.C. § 2701(c)(1) excepts from Title II
> seizures of e-mail authorized "by the person or
> entity providing a wire or electronic
> communications service." . . .  In *Bohach v. City
> of Reno*, 932 F. Supp. 1232 (D. Nev.1996), a
> district court held that the Reno police
> department could, without violating Title II,
> retrieve pager text messages stored on the police
> department's computer system because the
> department "is the provider of the 'service'" and
> "service providers [may] do as they wish when it
> comes to accessing communications in *115
> electronic storage." *Id*. at 1236.  Like the court
> in *Bohach*, we read § 2701(c) literally to except
> from Title II's protection all searches by
> communications service providers.  Thus, we hold
> that, because [the plaintiff's] e-mail was stored
> on [the defendant's] system (which [the defendant]
> administered), its search of that e-mail falls
> within § 2701(c)'s exception to Title II.

*Id*. at 114-15.

       The facts here are similar to those in *Fraser*, and the

Court finds the reasoning of *Fraser* to be persuasive.  Here

Plaintiffs do not allege nor could they credibly allege

Defendants, as providers of the electronic communication service

in question, acted without their own authority.  Pursuant to the

exception in § 2701(c)(1), therefore, the Court concludes

Defendants are not liable for violating § 2701(a).  Accordingly,

the Court grants Defendants' Motion to Dismiss as to the portion

of Plaintiffs' claim in which they allege Defendants violated §
2701(a) of SWECA.

**B.    Plaintiffs' claim under 18 U.S.C. § 2702(a)(1)**

18 U.S.C. § 2702(a)(1), provides "a person or entity
providing an electronic communication service *to the public* shall
not knowingly divulge to any person or entity the contents of a
communication while in electronic storage by that service."
Emphasis added.

Plaintiffs allege in their Complaint that Defendants
provide "an electronic communication service to the public."
Nevertheless, Defendants contend the remaining allegations in
Plaintiffs' Complaint make clear Defendants' system that allowed
for the sending, receiving, and storage of email messages was not
available to the public.  Plaintiffs, however, assert they have
sufficiently alleged Defendants provided an electronic
communication service to the public.  Specifically, Plaintiffs
point out that their allegations include the following:

> In or about March 2004, THG formed FPS for its
> advisor affiliates and outside RIAs who did not
> wish to become Advisor Affiliates of THG.
> Currently about 70 RIA's use the FPS back office
> operation.  These back office operations include a
> technological infrastructure for computer
> services, server access for storing client files
> and other files, and providing email to the
> advisor Affiliates, including CJA, and to the FPS
> outside advisors.

Compl. at ¶ 13.  Defendants, in turn, contend Plaintiffs'
allegation is not sufficient to establish that Defendants offered

12 - OPINION AND ORDER

their service to the public.  Instead, according to Defendants,
Plaintiffs only show Defendants offered electronic communications
services that were limited to private subscribers and, in fact,
that members of the general public were not invited nor permitted
to join Defendants' service.

        SWECA does not define the word "public" nor has the
Ninth Circuit analyzed that language in § 2702(a)(1).  Other
courts, however, have analyzed the requirement under § 2702(a)(1)
that the person or entity at issue must provide electronic
communications services to the public.

        For example, in *Andersen Consulting LLP v. UOP*, the
defendant hired the plaintiff "to perform a systems integration
project."  991 F. Supp. 1041, 1042 (N.D. Ill. 1998).  During the
duration of the project, the plaintiff's employees had access to
and used the defendant's internal email system to communicate
with each other, with the defendant, and with third parties.  *Id*.
Ultimately the defendant terminated the systems-integration
project.  Subsequently the defendant brought an action in state
court for various state-law claims, and the plaintiff brought two
countersuits against the defendant for other state-law claims.
*Id*.  While the state cases were pending, the defendant divulged
to the *Wall Street Journal* the contents of certain of the
plaintiff's email messages that were on the defendant's e-mail
system.  The *Wall Street Journal*, in turn, published an article

13 - OPINION AND ORDER

that excerpted some of the plaintiff's email messages.  In

response the plaintiff filed an action in federal court alleging,

among other things, that the defendant violated § 2702(a)(1) when

it disclosed the plaintiff's email messages.  *Id.*  The court

granted the defendant's motion to dismiss the plaintiff's claim

for violation of § 2702(a)(1):

> To be liable for the disclosure of Andersen's
> e-mail messages, UOP must fall under the purview
> of the Act:  UOP must provide "electronic
> communication service to the public."  18 U.S.C.
> § 2702(a)(1). . . .  The statute does not define
> "public."  The word "public," however, is
> unambiguous.  "Public means the 'aggregate of the
> citizens' or 'everybody' or 'the people at large'
> or 'the community at large.'  Black's Law
> Dictionary 1227 (6th ed. 1990).  Thus,
> [§ 2702(a)(1)] covers any entity that provides
> electronic communication service (e.g., e-mail) to
> the community at large.
>
>                          * * *
>
> [The plaintiff] argues that the legislative
> history indicates that a provider of electronic
> communication services is subject to Section 2702
> even if that provider maintains the system
> primarily for its own use and does not provide
> services to the general public.  This legislative
> history argument is misguided.  "A court's
> starting point to determine the intent of Congress
> is the language of the statute itself."  *United
> States v. Hayward*, 6 F.3d 1241, 1245 (7th Cir.
> 1993).  If the language is "clear and
> unambiguous," the court must give effect to the
> plain meaning of the statute.  *Id.*  Since the
> meaning of "public" is clear, there is no need to
> resort to legislative history.
>
> Even if the language was somehow ambiguous, the
> legislative history does not support [the
> plaintiff's] interpretation.  The legislative
> history indicates that there is a distinction

14 - OPINION AND ORDER

between public and proprietary.  In describing
"electronic mail," the legislative history stated
that "[e]lectronic mail systems may be available
for public use or may be proprietary, such as
systems operated by private companies for internal
correspondence."  S. Rep. No. 99-541, at 8 (1986),
reprinted in 1986 U.S.C.C.A.N. 3555, 3562.  Thus,
[the plaintiff] must show that [the defendant's]
electronic mail system was available for public
use.

* * *

[The defendant has] an e-mail system for internal
communication. . . .  [The defendant] hired [the
plaintiff to provide services in connection with
the integration of certain computer systems.  As
part of the project, "[the defendant] provided an
electronic communication service for [the
plaintiff] to use.  That electronic communication
service could be used, and was used by [the
plaintiff] and [the defendant's] personnel, to
electronically communicate with . . . other [of
the plaintiff's] personnel, [the defendant's]
personnel, third-party vendors and other
third-parties both in and outside of Illinois."
Complaint ¶ 10.

Based on these allegations, [the plaintiff] claims
[the defendant] provides an electronic
communication service to the public.  However,
giving [the plaintiff] access to its e-mail system
is not equivalent to providing e-mail to the
public.  [The plaintiff] was hired by [the
defendant] to do a project and as such, was given
access to [the defendant's] e-mail system similar
to [the defendant's] employees.  [The plaintiff]
was not any member of the community at large, but
a hired contractor.  Further, the fact that [the
plaintiff] could communicate to third-parties over
the internet and that third-parties could
communicate with it did not mean that [the
defendant] provided an electronic communication
service to the public.  [The defendant's] internal
e-mail system is separate from the internet.

*Id*. at 1042-43.

Similarly, the court in *Conner v. Tate* granted the defendant's motion to dismiss the plaintiff's claim for violation of § 2702(a)(1).  130 F. Supp. 2d 1370, 1377 (N.D. Ga. 2001). The court reasoned:  "Although [the defendant] allegedly maintains a voice mail system for its employees' use, [the plaintiff] has not alleged that this system is in anyway available to the public.  Consequently, [the plaintiff] may not maintain an action against [the defendant] under 18 U.S.C. § 2702."  *Id.*

As noted, Plaintiffs allege in their Complaint that "THG formed FPS for its advisor affiliates and outside RIAs who did not wish to become Advisor Affiliates of THG."  There is not any indication in the Complaint that FPS was available to "the aggregate of the citizens or everybody or the people at large or the community at large."  Defendants assert, in fact, that Plaintiffs cannot credibly allege Defendants provided an electronic communication service to the public within the meaning of SWECA because FPS was only formed for and available to advisor affiliates and subscribing outside RIAs.

Accordingly, the Court grants Defendants' Motion to Dismiss as to Plaintiffs' claim that Defendants violated § 2702(a)(1) of SWECA.

## II.  Plaintiffs' state-law claims

If the Court grants Defendants' Motion to Dismiss as to

16 - OPINION AND ORDER

Plaintiffs' SWECA claims, Defendants request the Court decline to exercise supplemental jurisdiction over Plaintiffs' state-law claims because this Court would no longer have subject-matter jurisdiction and there is not any diversity jurisdiction in this matter.

Defendants point out that this matter is in the preliminary stages; without Plaintiffs' SWECA claims this matter is based solely on state-law claims; and the issue as to whether a plaintiff may bring a claim for conversion of intangible items is one that is unsettled under Oregon law and, therefore, best decided in state court. This Court agrees. *See* 28 U.S.C. § 1367(c)(3)("The district courts may decline to exercise supplemental jurisdiction over a [state-law] claim [if] . . . the district court has dismissed all claims over which it has original jurisdiction"). *See also Comm. Concerning Cmty. Improvement v. City of Modesto*, 583 F.3d 690, 712 (9th Cir. 2009)(district court did not abuse its discretion when it declined to exercise supplemental jurisdiction over the plaintiff's state-law claims that involved "complex and novel questions of state law.").

In addition, the Court concludes efficiency, convenience, fairness, and comity support the Court's decision to decline to exercise supplemental jurisdiction as to Plaintiffs' state-law claims. *See Tr. of Constr. Indus. and Laborers Health and*

17 - OPINION AND ORDER

*Welfare Trust v. Desert Valley Landscape & Maint., Inc.*, 333 F.3d 923, 925 (9th Cir. 2003). *See also Hurley v. City of Portland*, No. 09-CV-706-PK, 2009 WL 3379568, at *1 (D. Or. Oct. 20, 2009); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.").

Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state-law claims and dismisses those claims without prejudice.

## CONCLUSION

For these reasons, the Court **GRANTS** Defendants' Motion (#8) to Dismiss First Claim for Relief and Sixth Claim for Relief to the extent that the Court dismisses Plaintiffs' First Claim and declines to exercise supplemental jurisdiction as to Plaintiffs' remaining state-law claims.

IT IS SO ORDERED.

DATED this 23rd day of January, 2012.


/s/ Anna J. Brown
_____
ANNA J. BROWN
United States District Judge


18 - OPINION AND ORDER